(C. D. 526)

Paper Mill Equipment, Ltd. v. United States

United States Customs Court, Second Division

(Decided August 18, 1941)

*Siegel & Mandell* (*Joshua Davidson* of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon, Joseph E. Weil*, and *Richard H. Welsh*, special attorneys), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Dallinger, Judge: This is a suit against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation

of wire screen or cloth, described in the invoice as "phosphorbronce cloth." Duty was levied thereon at the rate of 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of machines not specially provided for. It is claimed that said articles are properly dutiable at the rate of 20 per centum ad valorem under the provision in said paragraph 372, incorporated therein by virtue of the trade agreement between the United States and Sweden, dated July 8, 1935, and promulgated in T. D. 47785, 68 Treas. Dec. 19, which provision specifically covers "Machines for making paper pulp or paper, not specially provided for, and parts thereof, not specially provided for, wholly or in chief value of metal or porcelain."

At the second hearing, held at New York on April 10, 1940, counsel for the Government, apparently disregarding the collector's classification of the merchandise under said paragraph 372, insisted that the same was properly dutiable at the rate of 50 per centum ad valorem under the provision in paragraph 318 of said act for "Fourdrinier wires and cylinder wires, suitable for use in paper-making machines (whether or not parts of or fitted or attached to such machines)."

A sample of the imported merchandise, consisting of 28-mesh wire cloth, was admitted in evidence as illustrative exhibit 1.

The plaintiff offered in evidence the testimony of G. L. M. Hellstrom, president and manager of the plaintiff corporation, who testified in part as follows:

By Mr. DAVIDSON.

Q. Can you tell us in what condition the merchandise is imported?—A. It is imported in the form of wire cloth, all ready to be fixed in this pulp manufacturing machine.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Judge DALLINGER. Does this Illustrative Exhibit 1 have any other use that you know of except in pulp and paper making machines?

The WITNESS. The only use is for manufacturing paper pulp, on a paper-pulp machine. That is the only use.

\*　　\*　　\*　　\*　　\*　　\*　　\*

By Mr. DAVIDSON.

Q. In other words, the machine cannot be used without the use of Illustrative Exhibit 1?—A. No.

Judge DALLINGER. As I understand it, this merchandise is only used in a pulp making machine?

The WITNESS. That's right.

Judge DALLINGER. It cannot be used on anything else that you know of?

The WITNESS. No.

On cross-examination the witness testified in part as follows:

By Mr. FITZGIBBON.

X Q. Mr. Hellstrom, in answer to the court's question you stated that this wire cloth can only be used on pulp making machines?—A. That's right.

X Q. But in answer to your counsel's question, you stated that the Kamyr machine can make pulp or paper depending on the size of the wire cloth?—A. I am sorry. It cannot be used for making paper.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. The merchandise you import is 28 mesh?—A. Usually is 28; maybe sometimes 25 or 26. Twenty-eight is standard.

X Q. Did you also on direct examination state that you are familiar with the paper making industry throughout New England in this country; that you visited mills where they make paper?—A. Yes, I visited mills.

X Q. Have you seen them make what is known as roofing paper?—A. I have not seen it, but I know of it.

X Q. Do you know about the wire they use in the machine in manufacturing roofing paper?—A. They use single cable. I think it is 40 or 50 mesh.

The Government offered in evidence the testimony of two witnesses. The first, Harry G. Specht, vice president and general manager of the Eastwood Neally Co. of Belleville, N. J., manufacturer of paper mill wire cloth, testified that he was familiar with Fourdrinier and similar machines, and that his company manufactured wire for such machines; that he was familiar with the Kamyr machine, a photograph of which was admitted in evidence as illustrative exhibit A, having seen several of such machines in operation; that all of such machines which he had seen were used for making pulp; that his company at the present time did not manufacture merchandise similar to illustrative exhibit 1; that he had never seen the same installed in any machine; that a 28-cable mesh wire can be used on a cylinder machine, but that he had never seen it so used; that a 36-mesh is the smallest wire screen that he had ever sold; and that he believed that paper could be made on wire screen cloth similar to illustrative exhibit 1.

The witness then proceeded to testify in part as follows:

By Mr. WEIL.

Q. Why do you believe that paper can be made with this wire cloth?—A. Because I have seen a hand sheet of paper made on it.

Q. Were you present at the time it was made?—A. Not on this particular mesh, but on 24 mesh construction, which is more open than a 28 mesh, and if you can make it on 24, you certainly can make it on 28.

Q. What kind of paper do you believe can be made?—A. Heavy Kraft paper, bag paper, balance paper, heavy book stock; any kind of paper which does not require printing.

Judge DALLINGER. Do you know of your own knowledge whether any of those kinds of paper were made at or about 1930, at the time the Tariff Act was passed?

The WITNESS. No.

Judge DALLINGER. It is something that has developed since?

The WITNESS. Yes.

By Mr. WEIL.

Q. I don't want to try to change your answer, but you say you don't know, or it was not made?—A. To my knowledge I didn't know of any paper being made on a 28 mesh in 1930.

\*        \*        \*        \*        \*        \*        \*

In the course of this witness' testimony photographs of a Fourdrinier machine were admitted in evidence as illustrative exhibits B and C, respectively.

The witness then described an experiment made by the United States Testing Laboratories in the presence of the witness and Mr.

McNaughton, where certain sheets of paper were made on a hand sheet paper machine. A sample of the wire used in such experiment was admitted in evidence as collective exhibit D. Also, an enlarged photograph of the wire screen used was admitted in evidence as illustrative exhibit F.

On cross-examination the witness testified in part as follows:

By Mr. Davidson.

\*     \*     \*     \*     \*     \*     \*

X Q. And you supply various mills with wire cloth?—A. That is right.

X Q. In supplying these particular mills, how do you deliver the merchandise?—A. Fourdrinier wire.

\*     \*     \*     \*     \*     \*     \*

X Q. So that when this wire cloth which you sell reaches the plant, the plant people take this wire and affix it to the machine that they want it for?—A. That is right.

X Q. They cut it; is that right?—A. That is right. They fix it to the machine.

\*     \*     \*     \*     \*     \*     \*

X Q. As a matter of fact, referring to the invoice of the imported merchandise in question, you will notice that it is designated as one wire cloth; is that correct?—A. It says, "One Phosphorbronce cloth No. 28 mesh."

\*     \*     \*     \*     \*     \*     \*

X Q. So that it is entirely possible that that wire cloth came in imported into the country for a particular use on this Kamyr machine that has been testified to?—A. That is right.

X Q. And it is also entirely possible that no further manipulation was necessary, no cutting, reducing the size, in order to place it on the machine?—A. That is possible.

X Q. Now, can you tell us the difference between a Kamyr machine and a Fourdrinier machine?—A. A Kamyr machine is a cylinder, having a wire on the surface of it, whereas a Fourdrinier machine is a series of rolls, supporting a wire belt, which runs on a horizontal plane.\*   \*   \*

X Q. And the essential difference, of course, between a Kamyr machine and a Fourdrinier machine, is that a Kamyr machine makes pulp?—A. That is its use.

\*     \*     \*     \*     \*     \*     \*

X Q. Have you ever seen paper made on a Kamyr machine?—A. Never have.

X Q. To the best of your knowledge, the only use for the Kamyr machine is pulp manufacture?—A. That is right.

\*     \*     \*     \*     \*     \*     \*

X Q. Have you ever seen at this Union Bag Company, paper made with a 28 or less mesh wire cloth?—A. No, I did not.

The second Government witness, William G. McNaughton, an engineer in the employ of the Newsprint Service Bureau, testified that he had been engaged in the paper business for about 30 years; that he had not used, seen used, or supervised the use of a 28-mesh double cable wire cloth; that he was present at the experiment in the United States Testing Laboratories referred to in the testimony of the preceding witness. The witness then described the experiment at which sheets of paper represented by illustrative exhibits D–1 and D–2 were made on wire cloth represented by illustrative exhibit E, some of the

papers being made on a 50-mesh and some on a 24-mesh wire cloth (illustrative exhibit E).

The witness then proceeded to testify in part as follows:

By Mr. WEIL.

Q. Would you say, with your experience, that a woven wire cloth of the mesh, and similar in all material respects, excepting in length and width to Illustrative Exhibit E, was suitable for use in making paper?——

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

The WITNESS. Yes.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Mr. MacNaughton, if you had a wire similar to Illustrative Exhibit E, except proper length, and in the proper width, could you apply it to a cylinder machine and make paper?—A. Yes.

Judge DALLINGER. But you have never done it?

The WITNESS. No.

Judge DALLINGER. And you never heard of anyone else doing it, except for experimental purposes?

The WITNESS. That is right.

By Mr. WEIL.

Q. Are you familiar with a 28 mesh, double cable Kamyr quality cloth, Phosphorbronce cloth, 3.16 by 4.90 meters—15.48 meters?—A. No.

Q. Never saw a cloth like that?—A. No.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Q. Are you familiar with the Kamyr machine?—A. I have seen them.

Q. Familiar with a Fourdrinier machine?—A. Yes.

Q. Cylinder machine?—A. Yes.

Q. Did you hear Mr. Specht testify that by removing the presses from a Kamyr machine, it could be operated as a cylinder machine?—A. Yes.

Q. Is that your opinion?—A. In general, yes.

Defendant's witness, Harry G. Specht, recalled, testified in part as follows:

By Mr. WEIL.

Q. Mr. Specht, have you, with your experience, ever known a wire, or woven wire cloth, to be delivered, which did not require cutting of some kind or other?—A. No.

Q. I should say, a wire woven cylinder cloth.—A. They are fitted to the cylinder in the mill.

Judge DALLINGER. Is there anything to prevent their having been fitted by specifications?

The WITNESS. In general, no, for this reason. Woven wire cloth is like an elastic band, and when they are fitted to a cylinder, they must be fitted very tightly, and due to that fact it is practically improbable in commercial manufacture to cut a piece of cylinder cloth to the exact length so that it would be fit on to the cylinder.

Judge DALLINGER. It might be possible?

The WITNESS. It is possible, but not probable.

Upon this record we find the following facts:

1. That the involved merchandise consists of wire cloth some having 28 and some less than that number of meshes in warp and filling per lineal inch, and is fairly represented by exhibit 1 herein.

2. That said wire cloth in its imported condition is ready to be affixed to a Kamyr pulp-making machine without requiring any further manipulation or work applied thereto.

3. That said wire cloth is an integral part of said Kamyr machine without which the latter could not perform the function for which it was designed and constructed.

4. That said wire cloth in its imported condition has no other use than as part of said machine.

5. That said wire cloth is not suitable for use in making paper, and there is no evidence in the record that paper has been made by the use of a screen having 28 meshes, except for experimental purposes.

Although the present wire screen or cloth is an integral part of a pulp-making machine, nevertheless on account of its size it is not suitable for use in paper-making machines. Therefore, it must be excluded from the said provision in paragraph 318. *Geo. S. Bush & Co., Inc.* v. *United States*, T. D. 48138, 69 Treas. Dec. 251. And since it is an integral part of a pulp-making machine, without which said machine could not properly perform its function, this screen or cloth is properly dutiable under said paragraph 372, as alleged by the plaintiff. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. 322, T. D. 46851.

Upon the established facts we hold as matter of law that said wire cloth or screen constituting the imported merchandise at bar, not being suitable for use in paper-making machines, must be excluded from the provisions of paragraph 318 of the Tariff Act of 1930. It is therefore dutiable at the rate of 20 per centum ad valorem under the provision in paragraph 372 of said act, as modified by the Swedish Trade Agreement promulgated in T. D. 47785, 68 Treas. Dec. 19, for "Machines for making paper pulp or paper, not specially provided for, and parts thereof, not specially provided for, wholly or in chief value of metal or porcelain," as alleged by the plaintiff. That claim of the plaintiff is therefore sustained; but as to all other merchandise the claims are overruled. Judgment will be rendered accordingly.